UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FELISHA ANN SAFFORD, O/B/O J.C.P.
(minor),

    Plaintiff,

v.                                    Case No.: 2:18-cv-277-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Felisha Ann Safford o/b/o a minor J.C.P's Complaint, filed on April 24, 2018. (Doc. 1).[1] Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for child supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

A person under the age of eighteen (18) is considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe

---

[1] For clarity, the Court refers to Felisha Ann Safford as "Plaintiff" and J.C.P. as the "Child" in this Opinion and Order.

functional limitations and, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Henry v. Barnhart*, 156 F. App'x 171, 173 (11th Cir. 2005) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). Social Security regulations contain a three-step sequential evaluation process for determining whether a child is disabled. *Id.* (citing 20 C.F.R. § 416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999)). For the first step, the ALJ must determine whether the child engaged in substantial gainful employment. *Id.* (citation omitted). If yes, then the child is not disabled. *Id.* If not, then the ALJ moves to step two to determine whether the child has a severe impairment. *Id.* If not, the child is not disabled. *Id.* If yes, then the ALJ considers whether the child has an impairment or combination of impairments that medically equals or functionally equals the Listings of impairments. *Id.* If the child satisfies the Listings, then the child is disabled. *Id.*

If the child's impairments do not meet or medically equal a listed impairment, the fact finder then must determine if the child's impairments are functionally equivalent to the Listings. 20 C.F.R. §§ 416.924(d), 416.926a (discussing functional equivalence). For the child's impairments to functionally equal the Listings, the child's impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ must consider the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself or herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

B.     **Procedural History**

On July 24, 2015, Plaintiff filed an application for supplemental security income on behalf of her minor son J.C.P. (Tr. at 43, 156-64). Plaintiff asserted an onset date of August 3,

2014. (*Id.* at 156). Plaintiff's application was denied initially on December 8, 2015, and on reconsideration on January 23, 2016. (*Id.* at 43, 52). Administrative Law Judge William M. Manico (the "ALJ") held a hearing on November 21, 2016. (*Id.* at 28-41). The ALJ issued an unfavorable decision on May 9, 2017. (*Id.* at 10-23). The ALJ found that the Child has not been disabled since July 24, 2015, the application date. (*Id.* at 23).

On March 8, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Plaintiff filed a Complaint on April 24, 2018 in the United States District Court. (Doc. 1). This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18).

### C. Summary of the ALJ's Decision

The ALJ found that the Child was born on June 27, 2008, was a school-age Child on July 24, 2015, the date the application was filed, and was a school-age Child on the date of the decision. (Tr. at 13). In evaluating Plaintiff's claim, the ALJ utilized the three-step sequential evaluation process to determine whether the Child was disabled. (*Id.* at 13-23). At step one, the ALJ found that the Child had not engaged in substantial gainful activity since July 24, 2015, the application date. (*Id.*). At step two, the ALJ determined that the Child had the following severe impairments: "Tourette's syndrome; asthma; attention deficit hyperactivity disorder (ADHD); anxiety; developmental/speech language disorder; intellectual developmental disorder; and learning disorder (20 [C.F.R. §] 416.924(c))." (*Id.*).

At step three, the ALJ determined that the Child's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). (*Id.*). The ALJ also evaluated the Child under the "whole child" approach in order to determine if the impairment functionally equaled the

3

requirements of a listed impairment. (*Id.* at 14-23); *see also* 20 C.F.R. § 416.926a(b); Social Security Ruling 09-1p. The ALJ determined that the Child does not have an impairment or combination of impairments that functionally equals the severity of the Listings, 20 C.F.R. §§ 416.924(d) and 416.925a. (*Id.* at 14-23).

The ALJ found that the Child had no limitations in moving about and manipulating objects and had less than marked limitations in all other domains. (*Id.* at 17-23). As a result, the ALJ concluded that the Child has not been disabled since July 24, 2015, the date the application was filed. (*Id.* at 23).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises one issue. As stated by the parties, the issue is: whether the ALJ evaluated the medical opinion evidence consistent with the regulations, Agency authority, and Eleventh Circuit precedent. (Doc. 21 at 16).

Plaintiff argues that the ALJ failed to provide good, specific, and supported reasons for rejecting the opinion of Eric Leonhardt, D.O. (*Id.* at 18-19). Plaintiff claims that the ALJ supported his conclusions with "only a handful of highly selective pieces of evidence that no reasonable mind would accept as 'substantial evidence.'" (*Id.* at 20-21). Plaintiff argues that the ALJ did not consider the "whole child" in rendering his decision. (*Id.* at 21-22). Plaintiff also argues that the ALJ relied on State agency reviewers' opinions, but these reviewers did not have the more recent medical evidence, including Dr. Leonhardt's opinion when they rendered their opinions. (*Id.* at 22-23).

The Commissioner claims that Plaintiff fails to meet her burden of proving that the Child was disabled within the meaning of the Social Security Act. (*Id.* at 25). The Commissioner argues that the ALJ provided good reasons, supported by substantial evidence, for giving Dr. Leonhardt's opinion little weight. (*Id.* at 26-27). Specifically, the Commissioner asserts that the ALJ found Dr. Leonhardt's opinion as to the Child's marked and extreme limitations to be inconsistent with Dr. Leonhardt's own treatment notes and, this specific reason alone should be sufficient to support the ALJ's decision to give Dr. Leonhardt's opinion little weight. (*Id.* at 27).

5

Finally, the Commissioner argues that the ALJ gave weight to the state agency psychologists' opinions, finding some of the opinions consistent with the other evidence of record. (*Id.* at 31).

**Legal Authority**

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The Court examines Dr. Leonhardt's treatment records and opinion, and then turns to the ALJ's decision concerning Dr. Leonhardt's opinion.

### Dr. Leonhardt's Treatment Notes and Opinion

Dr. Leonhardt treated the Child from February 18, 2016 through November 1, 2016. (Tr. at 389-404, 451-469). On February 18, 2016, Dr. Leonhardt completed a psychiatric evaluation of the Child. (*Id.* at 389-94). As to the history of the Child's illness, Dr. Leonhardt noted that the Child was in second grade and likely to be retained due to focus, reading, listening, and comprehension problems. (*Id.* at 389). Dr. Leonhardt also noted that the Child goes to speech therapy, is under the care of a neurologist, and is currently taking medications for his problems. (*Id.*). Dr. Leonhardt noted that the Child was diagnosed with anxiety, Tourette's Syndrome, possible autistic spectrum disorder, sleep disturbance, poor fine-motor skills, and mood disorder. (*Id.*). Dr. Leonhardt also noted that the Child is very attached to his mother and she must be in his sight at all times or else he panics and may start crying, such as when the school bell rings. (*Id.*). In addition, Dr. Leonhardt found that when in the mother's presence, the Child must be constantly holding on to her or be very close to her. (*Id.*). Further, Dr. Leonhardt noted the Child has sleep issues, difficulty focusing, difficulty understanding what he reads or is told, is not interested in playing with other children his own age, and usually plays with younger children as long as his mother is present. (*Id.*). The Child also makes noises, blurts out words, and is always worried. (*Id.*).

Dr. Leonhardt noted that the Child is under the care of a neurologist and goes to speech therapy. (*Id.*). Dr. Leonhardt found that the Child was "[g]lobally delayed with developmental milestones, was anxious, had developmental articulations problems, dysphonic speech, and was over all cooperative." (*Id.* at 391-93).

On March 21, 2016, the Child returned to Dr. Leonhardt's office for a follow-up visit, for medication management and with a complaint that the Child was getting into trouble in the

afternoons at school.  (*Id.* at 395-99).  Dr. Leonhardt found the Child's mood was "ok," but his affect was anxious and he was quiet.  (*Id.* at 397).  Dr. Leonhardt adjusted the Child's medications for anxiety and mood  (*Id.* at 398).  On April 14, 2016, the Child saw Dr. Leonhardt and the mother reported that the Child's anxiety is much reduced, he is more active socially, and he is not as clingy to his mother, but continues to have sleep issues.  (*Id.* at 403).

In a June 7, 2016 psychiatric medication management note, Dr. Leonhardt found that generally the Child's mood and affect were good, but the Child was more irritable over the past few weeks and struck out at his younger sister.  (*Id.* at 454).  In addition, the Child was to repeat the second grade due to academic difficulties.  (*Id,*).  Dr. Leonhardt also noted that the Child had difficulty with sleep.  (*Id.*).  Dr. Leonhardt adjusted the Child's medications.  (*Id.*).  On July 26, 2016, the Child returned with a complaint that the Child was very busy and easily distracted.  (*Id.* at 456).  Although the Child's mood and affect were generally good, Dr. Leonhardt found that the Child was easily distracted and decided to try to improve the Child's level of anxiety by increasing his medications.  (*Id.* at 459).  At a September 8, 2016 visit, Dr. Leonhardt found the Child's mood and affect were generally good, but if the Child's tics continue to worsen, then Dr. Leonhardt would consider adding additional medications to the Child's medication regimen.  (*Id.* at 464).

Based upon this treatment history, on November 1, 2016, Dr. Leonhardt completed a Medical and Functional Capacity Assessment (Child) form.  (*Id.* at 466-69).  Dr. Leonhardt diagnosed the Child with Tourette's Disorder, generalized Anxiety Disorder, and Attention Deficit Hyperactivity Disorder.  (*Id.* at 466).  Dr. Leonhardt found the following objective signs supported these diagnoses:  (1) separation anxiety – fear of strange situations; (2) motor and vocal tics; and (3) poor focus/attention.  (*Id.*).  In the domains of functioning, Dr. Leonhardt

concluded that the Child had: (1) extreme limitations in interacting and relating with others; (2) marked limitations in acquiring and using information, attending and completing tasks, and health and physical well-being; and (3) moderate limitations in moving about and manipulating objects, and caring for yourself. (*Id.* at 467-69). Dr. Leonhardt commented that these impairments are "chronic disorders requiring on-going therapies to help maintain functioning level." (*Id.* at 469).

**ALJ's Consideration of Leonhardt's Opinion**

The ALJ afforded Dr. Leonhardt's opinion little weight. (*Id.* at 17). The ALJ found the following as to Dr. Leonhardt's treatment records and opinion:

> In November 2016, Eric Leonhardt, D.O., completed a Medical Source Statement after treating the claimant from February to November 2016. He opined that the claimant has marked limitation in acquiring and using information; attending and completing tasks; moving about and manipulating objects; caring for yourself; and extreme limitation in interacting with others (See Exhibit 13F/2-3). The record does not support the extreme limitations noted by the doctor. For example, in acquiring and using information, on examination, during examination, the claimant was able to respond to a why question by giving an answer. He was able to repair semantic absurdities, complete similes, and retell a story with a logical conclusion, which is not indicative of a person with marked limitations in that area (See Exhibit 6F/5). Regarding interacting with others, during some examinations, the claimant was friendly, outgoing, and content. He spoke when spoken to, and he spoke in complete sentences (See Exhibit 2F/9). Moreover, the claimant was engaging in conversation. The claimant had good eye contact, and while he made some noises during examination, he was not aware or bothered by them. His speech was clear, without stuttering/stammering, all of which indicates that he does not have extreme limitations in interacting with others (See Exhibit 2F/9). Accordingly, the doctor's opinions receive little weight.

(Tr. at 17).

**Analysis**

Dr. Leonhardt is the Child's treating psychiatrist and, thus, his opinion is entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips*, 357 F.3d at 1240). An ALJ may establish good cause if the treating physician's opinion is not supported

9

by the evidence or the evidence supports a contrary finding. *Id.* Basically, in the instant case, ALJ afforded little weight to Dr. Leonhardt's opinion asserting that the record does not support Dr. Leonhardt's findings of extreme limitations. (Tr. at 17).

To support this determination, the ALJ cited to an instance in the record when the Child was able to respond to "a why question, by giving an answer. [The Child] was able to repair semantic absurdities, complete similes, and retell a story with a logical conclusion which is not indicative of a person with marked limitation in [the area of acquiring and using information]." (*Id.*). This citation refers to a Speech and Language Evaluation dated November 20, 2015 completed by Alain Lopez, SLP, D., CCC, a Bilingual Speech-Language Pathologist. (*Id.* at 359-64). The ALJ cited to a portion of this record. (*Id.* at 362). The speech pathologist also found that "[w]hen compared to same age peers, claimant demonstrated difficulties retelling a story with introduction, using irregular plurals, and using time/sequence concepts." (*Id.*). In addition, when compared to his peers, the Child "demonstrated difficulties identifying the main idea, making a prediction, identifying words that rhyme, following multistep directions, making grammaticality judgements, demonstrating emergent literacy through book handling and print awareness, identifying a word that does not belong in a semantic category, and understanding prefixes." (*Id.*).

Although the speech pathologist is able to assess the Child regarding his speech, the Child's psychiatrist, Dr. Leonhardt, evaluated more than just the Child's speech to reach his opinion regarding the Child's limitations as to acquiring and using information. Further, Dr. Leonhardt treated the Child from February 2016 to November 2016, and his treatment notes support a finding that the Child has chronic disorders that require treatment, including medications to help maintain a level of functioning. In addition, the speech pathologist found

that some of the Child's receptive and expressive language abilities fell short of the Child's peer group, but the ALJ failed to mention these shortcomings. (*Id.* at 362). Further, the Speech and Language Evaluation was only one medical record in the entire transcript and not sufficient to establish that Dr. Leonhardt's opinion is not supported by the evidence of record as to his finding that the Child had marked limitations in the area of acquiring and using information.

The ALJ also found that in the area of interacting with others, "during some examinations," the Child was friendly, outgoing, and content, and spoke when spoken to and spoke in complete sentences. (*Id..* at 17). The Child also engaged in conversation, had good eye contact, and even though he made some noises, the noises did not bother the Child. (*Id.*). In addition, the ALJ determined that the Child's speech was clear without stammering or stuttering and this indicates that the Child does not have extreme limitations in interacting with others. (*Id.*).

The ALJ cites to one medical record from March 10, 2015 completed by Pamela Papola, M.D. to support his decision that the Child does not have an extreme limitation in interacting and relating with others. (*Id.* at 257-262). At that visit, the Child was friendly, outgoing and content. (*Id.* at 261). While playing during the visit, the Child made unintentional sounds, he engaged in conversation, made fairly good eye contact, his speech was fairly clear but notable for some articulation errors, and had no stammering or stuttering. (*Id.*). This treatment note also contains noted behavioral problems, including inattention, high activity level, poor impulse control, and disruptive behavior. (*Id.*). Dr. Papola found that some of these behaviors may be attributable to the Child's language deficits and tics. (*Id.*). In addition, Dr. Papola discussed the Child's developmental speech and language disorder and learning difficulties. (*Id.* at 261-62).

11

The Court finds that this one treatment note where the Child engaged in conversation does not constitute substantial evidence to afford a treating psychiatrist's opinion little weight in the finding of extreme limitation in interacting and relating with others. Within this same treating note, Dr. Papola found the Child to have behavior problems including disruptive behavior and poor impulse control. (*Id.* at 261). In addition, Dr. Leonhardt found at times that the Child was extremely attached to his mother and needed her present, was not interested in playing with children his own age, struck out at his sister, and was irritable and easily distracted. (*Id.* at 389, 454). At most visits, Dr. Leonhardt considered and changed the Child's medications to attempt to maintain or improve the Child's functioning levels. (*Id.* at 395, 400, 451, 456, 461). Upon review, the Court finds that citing to a portion of Dr. Papola's treatment notes does not constitute good cause to discount Dr. Leonhardt's opinion.

Accordingly, after consideration of the entire record, the Court finds that the ALJ did not establish good cause in affording little weight to Dr. Leonhardt's opinion and, further, that substantial evidence does not support the ALJ's findings in this record.

### III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

Accordingly, it is hereby **ORDERED**:

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the weight afforded the treating physicians' opinions in light of all of the medical evidence of record.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on May 24, 2019.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties